UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GOVERNMENT EMPLOYEES
INSURANCE CO., GEICO INDEMNITY
CO., GEICO GENERAL INSURANCE
COMPANY and GEICO CASUALTY
CO.,

           Plaintiffs,

v.                                                      Case No: 6:16-cv-2077-Orl-28TBS

CLEAR VISION WINDSHIELD REPAIR,
L.L.C., MY CLEAR VIEW WINDSHIELD
REPAIR, INC., DOUGLAS STROH,
CENTRAL FLORIDA WINDSHIELD
REPAIR, L.L.C., LIZZETTE LABELL,
TRAVIS LABELL, J.C. WINDSHIELD
REPAIR, L.L.C., JEAN CAROUSSO,
GDB INDUSTRIES, L.L.C., GREGORY
A. BECHTOLD and JOHN DOE
DEFENDANTS 1-10,

           Defendants.

## ORDER

Plaintiffs allege an expansive fraudulent scheme carried out by Defendant windshield repair companies (Defendants) to defraud Geico insurance companies (Plaintiffs) by filing thousands of phony insurance claims for windshield repairs. Plaintiffs filed several fraud-based claims against Defendants to recover their losses from the alleged scheme, as well as claims for declaratory judgment and unjust enrichment. Defendants filed three[1] motions to dismiss, (Docs. 18, 19, and 20), and Plaintiffs

---

[1] In a motion for an order, the movant is to include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request, all of which is to be in a single document not more than

responded. (Doc. 27). For the reasons stated below, Defendants' motions to dismiss must be denied.

I. **Background**[2]

Florida requires that insurance companies, including Plaintiffs, cover repair or replacement of damaged windshields of their insureds who have comprehensive coverage. (Compl., Doc. 1, ¶ 37; Fla. Stat. § 627.7288). Insureds are not required to pay a deductible on these claims. (Compl. ¶ 37). Ordinarily, an insured can choose who will perform this work, and the insured and Plaintiffs communicate to verify the loss, the nature of the damage, and the identification of the entity selected to do the repair. (Id. ¶ 41). An insured can then assign her rights to receive payment to her preferred windshield repair or replacement shop, who will then send a claim to Plaintiffs for payment. (Id., ¶¶ 42, 44). Defendants allegedly manipulated this process to defraud Plaintiffs.

Defendants formed a deal with car dealerships to allow them on the car dealerships' premises to market their windshield repair service to the dealership customers. (Id. ¶ 73). Through this access, Defendants falsely informed the insureds that their windshields were chipped or cracked and offered to repair the chips or cracks at no cost to the insureds. (Id., ¶ 79). Defendants would sometimes use a repair kit that contained a liquid that had no reparative value to "fix" the windshield. (Id. ¶ 80). Other times, Defendants would simply submit claims without providing services or engaging with insureds. (Id. ¶ 81). Defendants

---

25 pages. Fla. M.D. Local Rule 3.01(a). The three motions to dismiss are in violation of this rule. Further, the second and third motions to dismiss repeat several pages already set forth in the first motion to dismiss.

[2] The facts in this section are taken from the Complaint, and at this stage of the case are taken to be true. Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1261 (11th Cir. 2012).

sometimes sought assignments from insureds of their right to receive payment from Plaintiffs and obtained the insureds' signatures through misrepresentation or forgery. (Id. ¶¶ 83–86). Pursuant to this scheme, Defendants ultimately submitted fraudulent claims to Plaintiffs totaling $310,000.00. (Id. ¶¶ 87–88).

Based on these allegations, Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the Florida Civil Remedies for Criminal Practices Act (FCRCPA), and claims for common law fraud, declaratory judgment, and unjust enrichment. In response, Defendants filed three motions to dismiss. In their first motion, Defendants seek to dismiss the Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), claiming Plaintiffs do not have standing. (Doc. 20). In their second motion, Defendants seek to dismiss Plaintiffs' RICO, common law fraud, FDUTPA, FCRCPA, declaratory judgment, and unjust enrichment claims under Rules 12(b)(6) and 9(b). (Doc. 18). And in their third motion, Defendants seek to dismiss the Complaint for Plaintiffs' failure to join indispensable parties under Rule 12(b)(7). (Doc. 19).

II. **Motion to Dismiss under Rule 12(b)(1)**

Defendants contend that Plaintiffs do not have standing to "complain that the assignments were obtained through false pretenses and false misrepresentations to the insureds. Such a challenge would be the insureds' to make." (Doc. 20, ¶ 21). Standing is a threshold jurisdictional question. Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008). To demonstrate standing and thus survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must show: (1) an injury-in-fact; (2) a causal connection between the injury-in-fact and the defendant's

actions; and (3) that the injury will be redressed by a favorable decision. Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Here, despite Defendants' argument that "[t]he parties to the contractual assignment are the [only] parties with standing to complain about the contract," (Doc. 20 ¶ 21), Plaintiffs have not asserted claims arising from the contract. Rather, Plaintiffs have shown that they otherwise have standing: they paid $310,000.00 in reimbursements for fraudulent claims; Defendants caused that injury by engaging in fraudulent practices and then seeking reimbursement for those practices from Plaintiffs; and their injury—the wrongful reimbursements—will be redressed by damages. Defendants' motion to dismiss for lack of standing must be denied.

### III. Motion to Dismiss under Rule 12(b)(6)

Defendants move to dismiss all Counts of the Complaint for failure to state a claim upon which relief can be granted.

#### A. Standards

Generally, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In evaluating a complaint under this standard, the court must accept all well-pleaded factual allegations as true and construe

them in the light most favorable to the Plaintiff. Ironworks Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011). The court may consider exhibits attached to a complaint in ruling on a motion to dismiss. Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).

With regard to the allegations of common law fraud, RICO, FDUTPA and FCRCPA, Defendants additionally argue that the Complaint lacks the specificity required by Federal Rule of Civil Procedure 9(b) to "state with particularity the circumstances constituting allegations of fraud or mistake." The stringent requirement of Rule 9(b) may be relaxed "when specific 'factual information [about the fraud] is peculiarly within the defendants' knowledge or control,'" Stonecreek--AAA, LLC v. Wells Fargo Bank N.A., No. 1:12-CV-23850-MGC, 2013 WL 5416970, at *3 (S.D. Fla. Sept. 26, 2013) (quoting Hill v. Morehouse Med. Assocs., Inc., No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003)), and "in appropriate circumstances to aid those alleging prolonged multi-act schemes," U.S. ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1314 n. 25 (11th Cir. 2002). In such a circumstance, plaintiffs are "not required to provide 'a detailed allegation of all facts supporting each and every instance of submission of a false claim' . . . but the complaint must set forth a representative sample detail[ing] . . . the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." Hill, 2003 WL 22019936, at *3 n.6 (internal quotations and citations omitted). The purpose of Rule 9(b) is to "ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of." Anderson v. Transglobe Energy Corp., 35 F. Supp. 2d 1363, 1369 (M.D. Fla. 1999).

A plaintiff satisfies the requirements of Rule 9(b) if the plaintiff alleges "(1) the precise statements, documents or misrepresentations made; (2) the time, place, and

person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendant gained by the fraud." <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1371 (11th Cir. 1997). Further, "[i]n complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the 'temporal or geographic particulars of each [act] made in furtherance of the fraudulent scheme be stated with particularity,' but only that the 'plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.'" <u>AIU Ins. Co. v. Olmecs Med. Supply, Inc.</u>, No. CV-04-2934 (ERK), 2005 WL 3710370, at *11 (E.D.N.Y. 2005) (quoting <u>In re Sumitomo Copper Litig.</u>, 995 F.Supp. 451, 456 (S.D.N.Y. 1998)).

    **B.    Rule 9(b) Pleading Requirement for RICO, FDUTPA, FCRCPA, and Common Law Fraud**

Defendants argue that Plaintiffs fail to sufficiently plead their fraud-based claims—RICO, FDUTPA, FCRCPA, and common law fraud—with sufficient particularity under Rule 9(b). But in the Complaint, Plaintiffs identify the creators of the false insurance claims and described in detail numerous examples of the fraudulent actions. (Compl. ¶¶ 88 (i)–(xiv), 95 (i)–(ii), 103 (i)–(xxx)). Plaintiffs further provide as exhibits to the Complaint an extensive sampling of fraudulent billing, including the billing entity, the insurance policy number, Plaintiffs' claim number, the date of loss, the billed amount, and the paid amount. (Docs. 1-1, 1-2, & 1-3). The exhibits list over 2000 samples of fraudulent billing. Defendants' agents are not identified by name, but their relationship to Defendants is described in detail as is the time frame during which the fraudulent conduct took place. (Docs. 1-1).

Plaintiffs' submissions, taken together, meet the purpose of Rule 9(b) to give Defendants fair notice of fraud. See <u>State Farm Mut. Auto. Ins. Co. v. Comprehensive</u>

6

Physicians Servs., Inc., No. 8:14-cv-2381-T-30AEP, 2014 U.S. Dist. LEXIS 172824, at *5 (M.D. Fla. Dec. 15, 2014) (finding sufficient a complaint that identified over 400 claims in which defendant made false statements, along with claim number and amount paid on each claim, and an explanation of why the services were not proper or necessary). Viewing Plaintiffs' examples in conjunction with the conduct described in the Complaint, the specific fraud is evident. Further additional facts regarding the fraudulent activities are peculiarly within the Defendants' knowledge. Plaintiffs are not required to give detailed allegations of all facts supporting each and every instance of a false claim in this multi-act case to proceed on their fraud allegations. Hill, 2003 WL 22019936, at *3 n 6.

### C. FDUTPA

As an additional ground for dismissal of Plaintiffs' FDUTPA claim, Defendants argue that FDUTPA only provides a cause of action for "consumers," and that Plaintiffs—as insurance companies—do not qualify as consumers. Defendants' argument fails.

Plaintiffs have standing to bring a claim under FDUTPA. The Florida legislature broadened the remedy provision of FDUTPA in 2001 to replace the term "consumer" with "person." Fla. Stat. § 501.211(2). The term "person" is defined—along with the term "interested party"—to mean "any person affected by a violation of this part or any person affected by an order of the enforcing authority." Fla. Stat. § 501.203. "The legislative change regarding the claimant able to recover under FDUTPA from a 'consumer' to a 'person' must be afforded significant meaning. This change indicates that the legislature no longer intended FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well." Caribbean Cruise Line, Inc. v. Better Bus.

Bureau of Palm Beach Cty., Inc., 169 So. 3d 164, 169 (Fla. 4th DCA 2015).[3] This is consistent with FDUTPA's purpose, which is to "[t]o protect the consuming public *and legitimate business enterprises* from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). Defendants' motion must be denied on this ground.

### D. FCRCPA

Plaintiffs assert a claim under the FCRCPA in Count 10 based on Defendants' alleged criminal insurance fraud. Defendants argue that this claim must be dismissed because there has been no criminal finding of guilt under the criminal insurance fraud statute, which provides a separate cause of action to "[a]ny insurer damaged as a result of [insurance fraud] when there has been a criminal adjudication of guilt." Fla. Stat. § 817.234(5).

Defendants' reliance on the cause of action provided in the insurance fraud statute is misplaced. Plaintiffs' claim is under FCRCPA, which provides that "[a]ny person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of § 772.103 shall have a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200." Fla. Stat. § 772.104. Among the criminal practices defined in section 772.103 are "fraudulent practices, false pretenses, fraud generally, and credit card crimes." Fla. Stat. § 772.102(1)(a)(22). This includes insurance fraud as it is defined in section 817.234(1)(a)1, Florida Statutes.

---

[3] Defendants rely on Sonic Auto., Inc. v. Galura, 961 So. 2d 961 (Fla. 2d DCA 2007), in support of their argument that FDUTPA protects only *consumers*, but it does not analyze whether the change to "person" expands the base of complainants seeking damages under FDUTPA.

8

The cause of action cited by Defendants is independent of the Plaintiffs' cause of action under FCRCPA. Of course, Plaintiffs could assert a cause of action under the insurance fraud statute if Defendants are ever adjudicated guilty of insurance fraud. But Plaintiffs have not asserted that claim here; instead, they have brought a cause of action under FCRCPA, which does not require any previous adjudication of guilt. Defendants' motion fails on this ground.

### E. Declaratory Judgment

Plaintiffs seek a declaratory judgment that Defendants have no right to receive payments of pending fraudulent bills submitted to Plaintiffs. Defendants first argue that this claim should be dismissed because Plaintiffs have not alleged an underlying claim upon which declaratory relief can be granted. But Plaintiffs' claim for a declaratory judgment is expressly based on Plaintiffs' alleged misrepresentations that (1) they provided services, (2) they were in possession of valid assignments of benefits from each insured, (3) they were authorized by the insureds to file claims against the insureds' policies, (4) the billed-for services constituted legitimate windshield repairs and replacement, and (5) the billed-for services were actually provided. (Compl. ¶¶ 130-34). These are the same fraudulent misrepresentation claims that are alleged in Plaintiffs' other fraud-based claims. Thus, Plaintiffs' request for a declaratory judgment remedy is not without an underlying claim. Defendants' argument fails.

Defendants next argue that the Court should abstain from hearing the declaratory judgment claim because the same issues are being litigated in state court. Defendants rely on Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942), which provides that "[o]rdinarily, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the

same issues, not governed by federal law, between the same parties." Brillhart, 316 U.S. at 494–95. Thus, a court may, in its discretion, "'abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts.'" Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1331 (11th Cir. 2005) (quoting Centennial Life Ins. v. Poston, 88 F.3d 255, 257 (4th Cir.1996)).

But here, even assuming that the Brillhart standard applies to Plaintiffs' claim for declaratory judgment,[4] the Court does not have enough information about the claims pending in state court to know whether they are "parallel" to this action.[5] Defendants do not assert in their motions any facts about pending state court actions sufficient for the Court to determine whether the Court should abstain under Brillhart.[6] Thus, Defendants' motion fails on this ground.

F.   **Unjust Enrichment**

Plaintiffs assert a claim for unjust enrichment in Count 12. Defendants argue that the assignment entered into between Defendants and the insureds created a contractual

---

[4] Neither party has addressed the circuit split about whether Brillhart's discretionary standard is applied solely in instances where declaratory relief is sought. See State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1308 (M.D. Fla. 2014) (identifying the circuit split); Regions Bank v. Commonwealth Land Title Ins. Co., No. 11-23257-CIV, 2012 WL 1135844, at *3 (S.D. Fla. Apr. 4, 2012) (same). Because Plaintiffs seek monetary relief in addition to declaratory relief, it is unclear whether Brillhart's discretionary standard—rather than the higher "exceptional circumstances" standard articulated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)—applies.

[5] In Plaintiffs' Notice of Pendency of Other Actions, they note that Defendants have "filed approximately 1,115 cases against [Plaintiffs]" in state court "seek[ing] additional benefits for alleged windshield repair or replacement services under the applicable GEICO insurance policy pursuant to purported breach of contract claims." (Doc. 26 at 1). This information is not sufficient for the Court to determine whether those claims are parallel.

[6] Defendants' suggestion that Plaintiffs' declaratory judgment claim violates the Anti-Injunction Act fails because Plaintiffs do not ask for an injunction to stay any state proceeding. See 28 U.S.C. § 2283.

10

relationship between Plaintiffs and Defendants that prevent Plaintiffs' from asserting unjust enrichment. (Doc. 18 ¶¶ 58, 60). Defendants are correct that a claim for unjust enrichment cannot succeed where there is an underlying contract. See Williams v. Bear Stearns & Co., 725 So. 2d 397, 400 (Fla. 5th DCA 1998). But their argument otherwise misses the mark.

The assignment between insureds and Defendants did not result in a contract between Plaintiffs and Defendants. Under Florida law, the assignment of benefits "does not entail the transfer of any duty to the assignee." Shaw v. State Farm Fire & Cas. Co., 37 So. 3d 329, 332 (Fla. 5th DCA 2010) (en banc), overruled on other grounds, Nunez v. Geico Gen. Ins. Co., 117 So. 2d 388 (Fla. 2013). Therefore, Defendants did not assume any contractual duty to Plaintiffs when the insureds assigned to Defendants the payment owed to the insureds under the insurance agreement. This resulted in a lack of contractual privity. See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013). Hence, there are no contractual rights that Plaintiffs may enforce against Defendants, and Plaintiffs' remedy is unjust enrichment. See id.

IV. **Motion to Dismiss under Rule 12(b)(7)**

Defendants argue the Complaint must be dismissed for failure to join indispensable parties, the insureds, as they are the parties to the assignment agreement with Defendants. To grant a dismissal for failure to join an indispensable party, a court must determine "either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings." Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843, 847 (11th Cir. 1999) (citing Wymbs v. Republican State Exec. Comm., 719 F.2d 1072, 1079 (11th Cir. 1983)). The burden is on the moving party "to

11

show the nature of the unprotected interests of the absent parties." W. Peninsular Title Co. v. Palm Beach Cty., 41 F.3d 1490, 1492 (11th Cir. 1995).

Defendants have failed to carry their burden of establishing that Plaintiffs' insureds are indispensable parties to this action. The insureds were not active participants in the fraudulent scheme, they have not claimed an interest in this action, and none of Plaintiffs' claims require a determination of the insureds' legal rights. Thus, complete relief can be granted without joinder of the insureds. Defendants' motion to dismiss for failure to join indispensable parties must be denied.

### IV. CONCLUSION

Defendants' Motions to Dismiss (Docs. 18, 19, and 20) are **DENIED**. Defendants shall answer Plaintiffs' Complaint within fourteen days from the date of this Order.

**DONE** and **ORDERED** in Orlando, Florida, on March 29, 2017.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record